GARTMAN vs. QCHC, et al.

IN THE UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF ALABAMA

Case No. 2:18-cv-534-MHT

## Revised Preliminary Expert Report of Michael McMunn

I am Board-Certified Family Nurse Practitioner with additional certification in correctional healthcare. I have 25 years of experience as a registered nurse and 21 years of experience as a nurse practitioner. I have worked in correctional healthcare for 19 years and I have been certified for 14 years in correctional healthcare. I currently devote more than 50% of my professional time to active clinical practice in correctional facilities. I have provided clinical services in more than 50 correctional facilities over the course of my career.

## I. Information Reviewed and Relied Upon in Forming my Opinions

I have worked in correctional facilities of similar size, scope, census and staffing. I have functioned in similar clinical roles in over 50 jail correctional settings. I have supervised physician assistants, nurse practitioners, registered nurses and licensed practical nurses. I possess experience to form an opinion about the relevant matters in this case. In formulating my opinions in this matter, I have relied on my education, knowledge and experience in the correctional healthcare industry as set forth above and in my curriculum vitae, which is attached as Exhibit A. My fee schedule is attached as Exhibit B. I reviewed and relied upon the following documents and data in connection with this case. As of the time of the production of this report I have not received access to several relevant depositions including those of the Defendants in this case. I reserve the right to modify my findings if new information or documents are later received:

1. (5) Audio files, notes
2. Gartman Deposition #1, NOD, 41 Pictures
3. Gartman Deposition #2, + 8 Exhibits
4. Agee Deposition #1 + 2 Exhibits, + Affidavit
5. Ball Deposition + 10 exhibits
6. Grady Interrogatories

Expert Report of Michael McMunn
August 12, 2021
Page 2

7. Jackson Hospital Records (focused review)
8. 3rd Amended Complaint
9. 61 Pictures
10. QCHC Documents
11. Baptist Health Records
12. Cardiology Records
13. Docs from Gartman, list of providers
14. Jackson Clinic Cardiology, 2 volumes
15. 9 Audio recordings
16. QCHC Medical Record
17. 2014 National Commission on Correctional Healthcare Standards (NCCHC)
18. MAC 1200 EKG – Cleaning, disinfection, and maintenance requirements.

## II. Statement of Opinions and Factual Basis

a. Mr. Gartman's relevant medical history-

1. 7-1-2007 – Cardiac Cath with Stent
2. 5-2-2010 - (AICD) Implanted defibrillator
3. 7-11-2012 – Cardiac Cath
4. 1-19-2015 – Doppler Echo – 40-45% Ejection Fraction
5. 5-26-2016 – Cardiac Cath with Stent
6. 5-28-2016 – Doppler Echo – 30-35% Ejection Fraction (after jail stay)
7. 5-28-2016 - Non-ST elevation Myocardial Infarction
8. Atrial Fibrillation
9. Cardiomyopathy
10. Coronary Artery Disease
11. Hypertension
12. Hyperlipidemia
13. Chronic Obstructive Pulmonary Disease (COPD)
14. Anxiety Disorder
15. Depression
16. Gastro Esophageal Reflux (GERD)
17. Back and Knee Surgery
18. Carpal Tunnel Release Surgery

Expert Report of Michael McMunn
August 12, 2021
Page 3

    **b.** Mr. Gartman's relevant offered medication history -

        1. None.  Mr. Gartman was denied the medications brought to the facility by his parents and the nursing-medical staff provided no medications.

    **c.** Relevant timeline-

1. May 25, 2016    2132  Intake completed.  Staff advised of Respiratory problems, High Blood Pressure, Heart Problems, Heart Disease and need for current medications.

2. May 25, 2016    2300  Parents brought medications to facility.  Not accepted and not provided to Mr. Gartman.

3. May 26, 2016    0221  Shortness of breath and chest pain noted, no orders and no referral to hospital.  Lisa Brady LPN advises that she will see him when she comes in the morning.

4. May 26, 2016    0400  Housing change.

5. May 26, 2016    0530-1200   No documented evaluation by Lisa Brady LPN.

6. May 26, 2016    1400 Lisa Brady LPN evaluates Mr. Gartman.  Documented assessment of questionable origin has multiple deficits and blank areas.  No EKG ordered.  No medications provided.  First defibrillator shock applied in her presence, resulted in no additional assessment, EKG order or medications.  Sent out of office, back to cell.

7. May 26, 2016    1442  Defibrillator (AICD) shocks Mr. Gartman

8. May 26, 2016    1514  Defibrillator (AICD) shocks Mr. Gartman, twice

9. May 26, 2016    1515  Defibrillator (AICD) shocks Mr. Gartman

10. May 26, 2016   1516  Defibrillator (AICD) shocks Mr. Gartman

11. May 26, 2016   1517  Defibrillator (AICD) shocks Mr. Gartman, twice

12. May 26, 2016   1519  Defibrillator (AICD) shocks Mr. Gartman

13. May 26, 2016   1520  Defibrillator (AICD) shocks Mr. Gartman

14. May 26, 2016   1522  Defibrillator (AICD) shocks Mr. Gartman

Expert Report of Michael McMunn
August 12, 2021
Page 4

15. May 26, 2016   1523   Defibrillator (AICD) shocks Mr. Gartman

16. May 26, 2016   1525   Defibrillator (AICD) shocks Mr. Gartman

17. May 26, 2016   1537   Defibrillator (AICD) shocks Mr. Gartman

18. May 26, 2016   1538   Defibrillator (AICD) shocks Mr. Gartman

19. May 26, 2016   1544   Defibrillator (AICD) shocks Mr. Gartman

20. May 26, 2016   1651   Defibrillator (AICD) shocks Mr. Gartman

21. May 26, 2016   1651   Defibrillator (AICD) shocks Mr. Gartman

22. May 26, 2016   1652   Defibrillator (AICD) shocks Mr. Gartman

23. May 26, 2016   1652   Defibrillator (AICD) shocks Mr. Gartman

24. May 26, 2016   1653   Defibrillator (AICD) shocks Mr. Gartman

25. May 26, 2016   1654   Defibrillator (AICD) shocks Mr. Gartman

26. May 26, 2016   1655   Defibrillator (AICD) shocks Mr. Gartman

27. May 26, 2016   1656   Defibrillator (AICD) shocks Mr. Gartman

28. May 26, 2016   1658   Defibrillator (AICD) shocks Mr. Gartman

29. May 26, 2016   1659   Defibrillator (AICD) shocks Mr. Gartman

30. May 26, 2016   1712   Mr. Gartman released from custody and EMS activated.

31. May 28, 2018         Diagnostics at hospital reveal decreased ejection fraction, cardiac enzymes from 10 to 80 times above normal and a significant Non-ST elevation Myocardial Infarction.


Deliberate Indifference Standard –

A standard in which a patient inmate is subjected to conditions that pose a substantial risk of serious harm and in which the medical staff member or provider treating the patient was aware of the conditions creating that risk and acted with a state of mind akin to recklessness, or in which they deliberately and unjustifiably follow a course of action without regard to the risks involved.

Relevant Research –

1. 2014 National Commission on Correctional Healthcare Standards (NCCHC)
2. MAC 1200 EKG Machine - Cleaning, disinfection, and maintenance requirements.

   **d.** Conclusions

### Lateshia Ball (LPN) providing care

It is my expert opinion that the actions of Lateshia Ball LPN providing care to Mr. Gartman did not meet the standard of care for a correctional healthcare setting. His presentation required additional and immediate actions. Mr. Gartman had serious medical needs as described above. Nurse Ball was aware of those needs and failed to provide Mr. Gartman the basic care necessary to treat those needs. Her actions or failures to act were unjustifiable under the circumstances and posed a serious risk of harm to Mr. Gartman. The actions or omissions that she engaged in that can be discerned directly from the medical records themselves include, but are not necessarily limited to:

1. Failure to secure medically required medications.
2. Failure to secure a medically required referral to emergency room/hospital.
3. Failure to activate EMS/paramedics at first activation of defibrillator.
4. Subjecting Mr. Gartman to 27 documented defibrillator shocks without referral.
5. Failure to process intake properly.
6. Failure to process intake history/physical properly.
7. Failure to refer to provider, doctor, corporate medical director.
8. Failure to inspect, maintain and utilize crucial diagnostic equipment (EKG).
9. Permission/Authorization of late release of medical record of questionable origin.

### Lisa Brady (RN) providing care

It is my expert opinion that the actions of Lisa Brady RN providing care to Mr. Gartman did not meet the standard of care for a correctional healthcare setting. His presentation required additional and immediate actions. Mr. Gartman had serious medical needs as described above. Nurse Brady was aware of those needs and failed

to provide Mr. Gartman the basic care necessary to treat those needs. Her actions or failures to act were unjustifiable under the circumstances and posed a serious risk of harm to Mr. Gartman. The actions or omissions that she engaged in that can be discerned directly from the medical records themselves include, but are not necessarily limited to:

1. Failure to secure medically required medications.

2. Failure to secure a medically required referral to emergency room/hospital.

3. Failure to activate EMS/paramedics at first activation of defibrillator.

4. Subjecting Mr. Gartman to 27 documented defibrillator shocks without referral.

5. Failure to process intake properly.

6. Failure to process intake and history/physical properly.

7. Failure to refer to provider, doctor, corporate medical director.

8. Failure to inspect, maintain and utilize crucial diagnostic equipment (EKG).

9. Permission/Authorization of late release of medical record of questionable origin

## Nursing Care Specific Causation Finding

More likely than not, the nursing care failures by Ms. Ball and Ms. Brady, as noted above, contributed to Mr. Gartman's unnecessary pain, anxiety, suffering and cardiac damage due treatment failure of his documented serious need. Mr. Gartman's likelihood of reduced pain, reduced anxiety and improved outcomes with proper medications and a timely referral to the emergency room/hospital, would have been significantly higher.

## OTHER GENERAL OPINIONS

1.      Based on my education, experience in chart review, experience in corrections and experience of reviewing 92 correctional healthcare cases. The second chart produced at the Brady deposition was more likely than not, **NOT** created at the time of Mr. Gartman's incarceration. It was likely generated later to address serious flaws in the documentation and treatment of Mr. Gartman.

2.      Even if considered legitimate, charting deficiencies reveal a consistent pattern of failure to meet the standard of care for Mr. Gartman's serious medical need.

3.      Documentation quality and compliance with written policies was below the standard of care and indicates a culture of disregard for inmate care in this facility.

4.      Failure to administer medications was below the standard of care and failed to treat his serious medical need. Nurses in a correctional setting are charged with responsibility for administering medications and know that such administration is expected of them. A pattern of failure to provide such medications shows a reckless disregard for the safety of a patient or patients.

5.      Failure to timely transport Mr. Gartman to the emergency room/hospital was below the standard of care and was either deliberate or unjustifiable in view of the risks to Mr. Gartman's health and safety.

6.      Failure to properly maintain and inspect the EKG machine was below the standard of care.  QCHC is responsible for periodic inspections to ensure compliance.

7.      Failure to provide proper training and supervision was below the standard of care.  Which included no corrective action by QCHC medical director, Dr. Kern, when made aware.

8.      In summary; written documentation, sub-standard care and policy violations reveal a culture of indifference by QCHC and its employed nurses in this facility. This resulted in significant avoidable pain, suffering, anxiety, and permanent cardiac damage to Mr. Gartman.

### III. Exhibits

Exhibits listed within this report may be used in future testimony.

### IV. Qualifications

My qualifications are attached on my Curriculum Vitae, which is attached as Exhibit A.  I am qualified to testify in this case due to my extensive experience working in correctional care facilities and in correctional health.

Expert Report of Michael McMunn
August 12, 2021
Page 8

## V. Testimony

I have been retained in 92 cases, with sizable shares by Plaintiff and Defendant. I have testified via deposition in the following 17 times:

Laudermilk vs. CCS – Maine Superior Court - DOCKET NO. CV-17-25

Nishimoto vs. San Diego – US Southern District of California - Case No. 16-cv-1974 BEN JMA (twice)

Moriarty vs. San Diego – US Southern District of California - Case No. 3:17-CV-01154-LAB-AGS

Calvin vs. Pima County – Arizona Superior Court - No. C20164699

Milline vs. CCS - United States District Court - Michigan Southern Division - Case No. 2:17-cv-12723

Stahlhut vs. Corizon – United States District Court – District of Arizona – Case No. CV-17-03100-DJH-MHB

Alexander vs. Corizon – United States District Court – Michigan Southern Division – Case No. 17-11435 & 17-13749

Gaines vs. Corizon – Superior Court of Arizona – CV2016 – 000823

Hannah vs. Armor – United States District Court – Southern Florida Division 8:19-cv-00596-JSM-SP

Power vs. State of Arizona – Superior Court of Arizona - CV2018 - 008861

McKee vs. CCS and Corizon – United States District Court – Western District of Arkansas – Hot Springs Division - Case No. 6:18-CV-06117-RTD

Kovalovsky vs. Mediko, et al. - United States District Court – District of South Carolina – Florence Division - Case No. 420-CV-00835-DCN-TER

Vester vs. QCHC, INC. et al. – United States District Court – Western Section of Tennessee – Western Division - Case No. 2220-cv-2401-SHL

Smith vs. Shy, et.al – United States District Court – District of Colorado - Civil Action No. 19-cv-02338-PAB-STV

Board vs. Primecare, et al - Circuit Court of Kanawha County, West Virginia - Civil Action No. 18-C-456

Expert Report of Michael McMunn
August 12, 2021
Page 9

Charles Jones v. County of Kent et al. – United States District Court – Western District of Michigan - Case No. 1:20-cv-00036

In the last four years, I have not testified at trial.

I have testified via panel hearing in Maine on one occasion. (Laudermilk vs. CCS – Maine Superior Court - DOCKET NO. CV-17-25)

## VI. Publication

I have published no articles in the past 10 years.

## VII. Compensation

My fee schedule is attached as Exhibit B.

I certify that these statements are true and correct to the best of my knowledge, to a reasonable degree of medical certainty. I reserve the right to modify my opinion as additional documents and evidence become available. Under penalty of perjury.

SIGNED,

*[signature]*

Dr. Michael McMunn DNP APRN-BC, CCHP-A
Board Certified Family Nurse Practitioner
Advanced Certification in Correctional Healthcare by the National Commission on Correctional Healthcare
Report dated August 12, 2021

Expert Report of Michael McMunn
August 12, 2021
Page 10

Exhibit A – Current Curriculum Vitae

## Dr. Michael McMunn DNP CCHP-A
## Expert Witness – Correctional Healthcare NP



| | |
|---|---|
| **Contact** | **Summary** |
| 4110 Lakeside Blvd. Monroe GA 30655<br>770-712-2210<br>contact@michaelmcmunn.com | Expert regarding Standard of Care determination in correctional healthcare settings for NP, PA, RN, LPN, CNA, MA and EMT function. Advanced Certification in Correctional Healthcare (CCHP-A), per the National Commission on Correctional Healthcare (NCCHC).<br>Expert regarding Georgia correctional facilities, policies, current legal and political trends. Experience with Diagnostic Facilities, State Prisons, CI's, PDC's, Transitional Centers, YDC's, RYDC's and County Jails. |
| **Education** | **Experience** |
| University of North Georgia<br>DNP Nursing – Graduation 2021<br>Doctoral Project – Rural Jail Suicide<br>Coursework – Risk Management | Nurse Practitioner (APRN) - Southern Health Partners — 2002 to Present<br>Nurse Practitioner (APRN) - Vista Healthcare Partners — 2002 to 2020<br>Nurse Practitioner (APRN) - CareATC – Monroe — 2014 to 2019 |
| Medical College of Georgia<br>MSN Nursing – Graduation 2000 | Project Manager - The Little Clinic — 2008 to 2011 |
| Brenau University<br>BSN Nursing – Graduation 1997 | Clinic and Project Development - MinuteClinic — 2005 to 2008 |
| Athens Technical College<br>ADN Nursing – Graduation 1996 | College Instructor - Medical College of Georgia — 2002 to 2005<br>Clinic Director – The Bridge Institute (GA DJJ) — 2001 to 2002 |
| Emmanuel College<br>AA Religion – Graduation 1987 | |
| **NCCHC Certifications** | **Licenses, Qualifications, Memberships and Certifications** |
| CCHP-A – Advanced - 2020<br>CCHP-MH – Mental Health - 2013<br>CCHP - 2007<br>Moderator<br>2019 NCCHC National Conference<br>Prison Standards Review | ANCC board certified as Family Nurse Practitioner since 2000<br>Licensed in Georgia as a RN and APRN (FNP)<br>Current DEA authorization<br>Content Reviewer – Journal of Correctional Health<br>Member – Georgia Nursing Congress, Correctional Healthcare – 2 Terms<br>Member – Academy of Correctional Professionals, ACA, GJA, and GSA |
| | **Previous Expert Witness Testimony Jurisdictions** |
| | Alabama    Arizona      Arkansas       California   Colorado<br>Florida      Georgia      Illinois            Indiana      Kansas<br>Kentucky  Louisiana   Massachusetts  Maryland   Maine<br>Michigan   Montana     New Jersey     N. Dakota  Ohio    Oregon<br>Pennsylvania  S. Carolina  Tennessee   Virginia      West Virginia |
| | **Georgia Peace Officers Standards Training Council (POST)** |
| | 2021 Approved Trainer – Suicide Prevention Training in County Jails |

Expert Report of Michael McMunn
August 12, 2021
Page 11

Exhibit B – 2020 Fee Schedule



**Expert Witness – Fee Schedule**
## Dr. MICHAEL MCMUNN, APRN, DNP-BC, CCHP-A

| Effective 5/1/21 – 12/31/21 Activity | Rate |
|---|---|
| **Review Expert Services** activity, 30+ days before any verbal or written report is due. | $325/Hour |
| **Rates for Case Review Expert Services** an 30 Full days before any verbal or written report is due. | $500/Hour |
| **Testifying for Deposition**<br><br>Fee must be paid in advance by requesting attorney, a minimum of **21** days prior.<br><br>If cancelled or rescheduled, 21 or more days prior, full refund.<br>If cancelled or rescheduled, 8-20 days prior, 50% refund.<br>If cancelled or rescheduled, less than 7 days prior, no refund and no rescheduling without new fee.<br><br>All estimated travel expenses must be paid by requesting attorney, **21** days prior.<br><br>Half day rate is arrival time to departure time at location, 4 hours. Continued questioning after 4 hours is billed. | **$2,000 Flat Rate 0.0-4.0 hours**<br><br>**$500.00/Hour thereafter** |
| **Testifying for Panel Hearings, Trials, Arbitrations, and Mediations**<br><br>Fee must be paid in advance by requesting attorney, a minimum of **21** days prior.<br><br>If cancelled or rescheduled, 21 or more business days prior, full refund.<br>If cancelled or rescheduled, 8-20 business days prior, 50% refund.<br>If cancelled or rescheduled, less than 7 business days prior, no refund and no rescheduling without new fee.<br><br>All estimated travel expenses must be paid by requesting attorney, **21** days prior.<br><br>Rate is arrival to departure time at location., 0.0-8.0 hours. Time per day greater than 8 hours is billed @ $500 hr. | **$5,000 per Trial Day Flat Rate 0.0-8.0 hours**<br><br>**$500.00/Hour thereafter** |
| **Travel Time for Testifying**<br>Maximum 8 hours per day. Overnight travel will be billed at 8 hours per day. Time calculated door to door. | $250.00/Hour |
| **Billable Expenses**<br>Billable expenses for supplies, postage, services, etc. are billed at cost.<br>Meals while traveling - $100 per any portion of a day, flat rate. Prepaid. | At Cost<br>$100 Daily for Meals |
| er – Rate is based on time remaining when funds/documents arrive until advised deadline | |
| **60+ days until verbal or written report**<br>is required before any services will be performed. This credit includes the first 8 hours of activity and is non-refundable. | $3,000 - includes first 8 hours of review. $325 per hour for all review time over 8 hours. |
| **31-59 days until verbal or written report**<br>is required before any services will be performed. This credit includes the first 8 hours of activity and is non-refundable. | $4,000 - includes first 8 hours of review. $325 per hour for all review time over 8 hours. |
| **16-30 days until verbal or written report**<br>is required before any services will be performed. This credit includes the first 8 hours of activity and is non-refundable. | $5,000 - includes first 8 hours of review. $500 per hour for all review time over 8 hours. |
| **1-15 days until verbal or written report**<br>is required before any services will be performed. This credit includes the first 8 hours of activity and is non-refundable. | $8,000 - includes first 8 hours of review. $500 per hour for all review time over 8 hours. |
| ces will generally be submitted at the end of each month. Invoices must be paid within 30 days, or case activity suspended until account is zero balance. Balances 60+ days past due will be assessed a 5% monthly fee charged 1st of each month until paid in full. Zero balance required for all document release and depositions. If short ne, inquire about estimate to complete. Submission of retainer constitutes absolute agreement with fee schedule ns and rates. Date for deposition is only reserved with payment. Do not use USPS for time critical payments. | **REQUIRED TERMS** |