## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

TRENTON GARTMAN,         *

                        *

     Plaintiff,         *

                        *

vs.                  *     CASE NO.: 2:18-cv-00534- MHT

                        *

PATRICK CHEATHAM; et al.     *

                        *

     Defendants.       *

## THE PARTIES' JOINT REPORT OF PARTIES' EVIDENTIARY MEETING

COME NOW the Parties, and submits the following Report to the Court following the evidentiary meeting of all Parties:

1.     On Friday, March 18, 2022, the undersigned attorney for Defendants Cheatham and Agee (Miland Simpler); attorney for Defendant Brady (LaBella McCallum); and attorney for the Plaintiff (Hank Sherrod) met virtually via Zoom with the Judge's permission to discuss the parties' evidentiary submissions and attempt to resolve any objections or disputes, as ordered by the Court.

2.     Below is of the summary of the parties' objections and agreement reached between the Plaintiff and Defendants over their motions in limine and written evidentiary objections.

## I.    Plaintiff's Exhibits Objected to by Defendants

### a.  Exhibit 1-May 26, 2016, Jackson Hospital ICD Data

Any evidence or testimony related to the Heart Rate (HR) and duration of firings on the FastPath Summary Plaintiff has included in his Exhibit List. The parties have stipulated that the record is an authentic, business record of Jackson Hospital. Defendants do object to the heart rate duration of firings contained in the record. Defendants will not object to the time of the firings which can be presented in a redacted document.

No physician or other qualified expert has testified to a reasonable degree of medical probability that any cardiac issues or ICD activity was medically or proximately caused by any act, omission, or occurrence at the Autauga County Jail. "Federal and state authorities are legion for the proposition that medical conclusions must be stated to a reasonable degree of medical certainty to be admissible." *Portis v. Wal-Mart Stores East, L.P.*, 2008 WL 3929672, *1 (S.D. Ala. Aug. 22, 2008) (footnote omitted); *Fed.R.Evid.* 702.  The times reported of the firings in the May 2016 download presented by Plaintiff differ from a download presumably of the same data done in August 2016.  That distinction begs the question of which download, if either, is accurate. However, the times are close enough that Defendant will not object to that data as long as the heart rate and duration is kept out. Furthermore, no witness, with specific knowledge of this St. Jude's (the manufacturer) report, has testified as to the meaning of the heart rate and the duration of the firings contained therein.  Only assumptions have been made. Dr. Kern

testified during his deposition that heart rate at the level reported translated to Plaintiff not being able to "stand around talking to people". Defendants also expect testimony that firings do not last but a second or two, not the duration listed on the download. Rather, that time includes the entire process of the firing process which includes more than the actual firing.

Plaintiff's position is that the ICD summary is relevant and admissible as a business record.

### b.  Exhibit 2-May 26, 2016, Jackson Hospital History and Physical

These Defendants and Plaintiff have resolved all disputes regarding this Exhibit and agree as to its admissibility.

### c.  Exhibit 6-Prattville EMS Report

These Defendants and Plaintiff have resolved the dispute regarding this Exhibit by agreeing as to the admissibility of partially redacted report.

### d.  Exhibits 7-15—Audio Recordings

Jail Recordings

7-15         Defendants reserve the right to object at trial if the recordings end up being duplicative of the testimony.

15.          Defendants specifically object to the jail recording from Sgt. DeRamus to City Magistrate Terry Mathis as hearsay within hearsay governed by FRE 805.

While a record may be admissible as a business record, if it contains hearsay, that information is not admissible unless it is governed by a separate exception.

The call was made to ask the Magistrate if she consented to release Plaintiff about one hour early. Plaintiff's attorney expressed to Defendants' attorney that he wanted to prove the time the call was made. Defendants agreed to stipulate to the time.

During the call, DeRamus said to Mathis … "at 17:50, I think he was supposed to be released, but I was saying, cause he is falling all over the floor and walked all over, talking about he going to the Sheriff and all that…"

There is no evidence that DeRamus had personal knowledge of that information. Captain Nixon, however, testified that Plaintiff's attorney, George Walthall told DeRamus that Plaintiff needed medical attention. Therefore, the likely source of that information was Walthall. Nixon has testified as to why EMS was called.

The tape also includes a partially inaudible line where the Magistrate says, "I just, you know, I don't think (inaudible) the damn medics to him." That statement makes no sense, and it would be more

prejudicial that probative for the jury to speculate as to its meaning pursuant to FRE 403.

**18-28**        **QCHC Policies**

Plaintiff has withdrawn his original Ex. 23 (Transfer Screening Policy) and made his original Ex. 34, Ex. 23.

Plaintiff is not alleging that QCHC policies and protocols he lists as exhibits arise to deliberate indifference. QCHC has been dismissed from the lawsuit. Plaintiff's retained expert, Michael McMunn, who has since been withdrawn, admitted that the National Commission on Correctional Health Care Standards ("NCCHC") for Health Services in jail were appropriate standards to follow.  While McMunn conceded at his deposition that he did not know what standards QCHC followed (which was a Defendant at that time), the parties do not dispute that QCHC's standards are the NCCHC standards.

Therefore, the only relevancy of the policies at this time is whether Nurse Brady followed or failed to follow certain QCHC policies as relevant to Plaintiff's alleged injury.  Plaintiff has not identified which, if any, policies he alleges she did not follow.  Therefore, Defendant objects to all of the standards based on the failure to identify which, if any, she failed to follow as not relevant, and,

potentially, more prejudicial than probative and confusing to the jury. Defendant reserves the right to make specific objections based on the above grounds if Plaintiff identifies and offers to admit one or more into evidence.

**36 – 38        Brady, Ball and Dr. Bates' Declaration**

Defendant objects to nurses Brady, Balls' and Dr. Bates' Declaration be used as actual exhibits for the same reason as depositions can't be used as exhibits. The Declarations are sworn statements and can be used for impeachment only.

**II.       Plaintiff's Amended Exhibits Agreed to by Parties**

**Agreed**

2.      Jackson Hospital History and Physical

3.      Autauga County Open Records Act Production

4.      Jail Logs

5.      Typed Version of Gartman nurse visit note

6.      EMS Report, as redacted

17.     Gartman Medical File

29.     Photos of Booking Area and Cell

30.     Agree with photo of the medical office with the stipulation that the contents may not be in the same position.

31.     Photos of Hallways Outside Medical Office and to/from Medical Office

32.     Photos Shower

33.     QCHC Nurse Protocol Index

34.     QCHC Shortness of Breath Protocol

35.     QCHC Formulary

**III.     Agee and Cheatham's Exhibits Objected to by Plaintiff**

a. Exhibit No. 6—Plaintiff's interrogatory responses

The Parties have resolved this dispute. It is agreed by the Parties that such evidence will only be introduced if necessary for impeachment.

**IV.     Plaintiff's Witnesses Objected to by Defendants**

All disputes have been resolved other than:

**a. Brandon Gartman**

**b. Tom McGowan**

Defendants requested Plaintiff after production of his witness list to specific what each is expected to testify to. Plaintiff responded generally that they would testify to Plaintiff's damages. Defendants maintain its objection until more detail is provided and reviewed. Defendants would then supplement its objection.

7

It is agreed by the Parties that the witnesses will not offer any unqualified medical opinions.

### c. Dr. Vance's deposition designations

Defendants' objections have not been resolved. They are set out in Doc. 221. Specifically, they are:

Dr. Clifton Vance is Plaintiff's treating physician. He placed a defibrillator to address Plaintiff's heart rhythm issue in 2010. He did not treat Plaintiff on the day Plaintiff was transferred from the Autauga County Jail to the emergency department. He did not perform the cardiac ablation or stent procedure on Mr. Gartman following Plaintiff's transfer to the hospital. There is no medical testimony that these procedures were "more probably than not" caused by multiple firings of Plaintiff's defibrillator at the jail. Nor is there any medical testimony that Plaintiff's heart was enlarged as a result of being shocked p. 37, ll. 7-23; p. 38, l. 1. Therefore, Defendants object to the reference to these procedures starting on p. 33, ll. 18-23; p. 34, ll. 1-23; p. 35, ll. 1-23; p. 36, ll. 1-6.

Plaintiff's attorney references the stent and ablation procedures and elicited testimony from Dr. Vance that both would have likely occurred regardless of any alleged violations of persons at the jail p. 34, ll. 19-23; p. 35, ll. 1-23; p. 36, ll. 1-6. He does not contest that neither procedure was caused by Defendants' alleged conduct. To allow testimony of cardiac procedures which were not caused by the

alleged liability of the Defendants, and, therefore not relevant, would put more weight on these medical procedures than warranted and would be more prejudicial than probative to the jury's understanding of what the Plaintiff claims as damages. Federal Rule of Evidence 403 allows the Court to exclude even relevant evidence if the probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issue, misleading the jury, undue delay or wasting time.  Fed.R.Evid. 403.

Plaintiff concedes that the stent and ablation procedures were not caused by the Defendants, nor that Plaintiff suffered any long-term risk p. 39, ll. 4-11, nor lost heart function as a result p. 36, ll. 20-23; p. 37, ll. 3-6. Therefore, to admit the non-relevant testimony violates five of the factors set out in Rule 403.

Defendants' objection to any reference by Dr. Vance or any witness to the St. Judge download is set out in its objections to the report in the exhibit list part of this report.

### V.   <u>Plaintiff's Motions in Limine Objected to by Defendants</u>

**a.  Motion No. 1—Evidence of the financial condition of the parties in connection with punitive damages.**

A dispute still exists as to whether Defendants should be permitted to introduce evidence of their financial condition in connection with punitive damages.

Plaintiff has moved to exclude Brady from putting on any evidence of her financial condition if a punitive damages charge is directed to the jury. Brady agrees that her wealth is irrelevant and should be excluded from testimony on evidence unless punitive damages and jury instructions regarding punitive damages are submitted to the jury. Brady objects to Plaintiff's exclusion of her wealth as it pertains to any punitive damages claims or punitive damages jury charges. Plaintiff's request is contrary to the Eleventh Circuit Pattern Jury Instruction 5.13. This instruction allows evidence of Defendants' financial resources to be considered by the jury if punitive damages are submitted to the jury.

Plaintiff provides no Eleventh Circuit precedent. Plaintiff's objections only cite to Second and Seventh Circuit cases.

Plaintiff has cited *Mathie v. Fries*, 121 F.3d 805 (2nd Cir. 1997), which is distinguishable because the defendant did not present evidence of his financial resources which was his burden to do. *Mathie* is also distinguishable in that the defendant had an indemnity agreement to pay the award. *Mathie* at 817.

Plaintiff also cited *Kemezy v. Peters*, 79 F.3d 33 (7th Cir. 1996), in which the issue was whether Plaintiff must introduce evidence of the officer's net worth. The Court said no. *Kemezy* at 34. The Court also noted that if defendant is to be fully indemnified, such evidence is inadmissible. *Kemezy* at 37.

These cases are distinguishable as punitive damages are not included in the definition of damages in Brady's policy.  (Ex. A, QCHC Bates 857-978.)

### b.  Motion No. 2—Evidence or argument that a defendant's character is inconsistent with plaintiff's allegations.

All disputes regarding this Motion have been resolved by Plaintiff and these Defendants. The parties agree that the defendants should not be permitted to introduce evidence of commendation, awards, or the defendants' good character outside of acts, omissions, interactions, conversations, and encounters with the Plaintiff. The parties agree that Defendants should be permitted to introduce evidence of acts of benevolence directed at or on behalf of the Plaintiff, and evidence which is material to the issues of whether Defendants acted "with an attitude of deliberate indifference."

### c.  Motion No. 4—Evidence regarding prior and subsequent alleged misconduct by Gartman, including allegations made by plaintiff's wife in plaintiff's divorce case.

The disputes regarding this Motion have been resolved. Plaintiff and these Defendants agree that evidence of Plaintiff's arrest prior to his incarceration at the Autauga County Jail, and the offense for which he was arrested, is admissible as to why Plaintiff was on a statutorily mandated 24-hour hold at the Jail. These documents are specifically an exhibit in all parties' disclosures as the county's

response to a Public Record's Request in May, 2018. However, Defendants won't introduce other details pertaining to plaintiff's divorce.

**Brady's MIL Objections, Party Stipulations for Report**

Agreed:

1. **TO EXCLUDE EVIDENCE REGARDING INSURANCE THAT MAY PROVIDE COVERAGE FOR DEFENDANTS' ALLEGED WRONGFUL ACTS**

2. **TO EXCLUDE ANY EVIDENCE OF ANY LAWSUITS, COMPLAINTS, INVESTIGATIONS OR GRIEVANCES AGAINST DEFENDANT THAT IS UNRELATED TO PLAINTIFF'S ALLEGED INJURY AND TREATMENT**

4. **TO EXCLUDE TESTIMONY OR EVIDENCE BY PLAINTIFF OR PLAINTIFF'S LAY WITNESSES CONCERNING MEDICAL OPINIONS**

The parties agree that 4(A-E, H, J-N) should be excluded. O and P is to be limited to what Cheatham and Agee observed.

To maintain an Eighth Amendment claim under 42 U.S.C. section 1983 based on prison medical treatment, an inmate must show deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *Evans v. Jefferson County Comm'n*, 2012 WL 1745610 (N.D. Ala. May 15, 2012) Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.

That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S. Ct. 1970, 1977-79, 128 L. Ed. 2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").

The specificity of the [Deliberate Indifference] standard is particularly important in the context of medical treatment, because the mere negligent diagnosis or treatment of a patient does not constitute deliberate indifference. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. The law must therefore be clear and specific enough for the medical official to know that his actions rise to the level of deliberate indifference and are not just negligent. A medical treatment case is also unique, however, because the standard for deliberate indifference need not depend solely on prior court decisions; the contemporary standards and opinions of the medical profession also are highly relevant in determining what constitutes deliberate indifference to medical care.

> *See Greason v. Kemp*, 891 F.2d 829, 835 (11th Cir.1990); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).
>
> **If an official's actions required medical judgments, a plaintiff may need to do more than refer to prior cases. A plaintiff could, in such an instance, produce opinions of medical experts which assert that the official's actions were so grossly contrary to accepted medical practices as to amount to deliberate indifference.** *See Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir.1989). **This latter method of proof often is** *essential* **when a doctor's actions are at issue, because the evaluation of medical care is frequently fact-specific and dependent on medical knowledge. Although this inquiry is similar to a determination of medical negligence, the plaintiff must show, (In this case, Nurse Brady's actions) far more than negligence in order to assert an eighth amendment violation.** Even if the medical experts assert that the care was grossly inadequate, it remains for a court or jury to determine if the care amounts to deliberate indifference.

*Howell v. Evans*, 922 F.2d 712, 720 (11th Cir.) (emphasis added), vacated pursuant to settlement, 931 F.2d 711 (11th Cir. 1991), and opinion reinstated sub nom. *Howell v. Burden*, 12 F.3d 190 (11th Cir. 1994).

Neither Plaintiff nor any of Plaintiff's lay witnesses have any medical training or expertise. Plaintiff and any lay witnesses are not qualified to give expert testimony regarding opinions about Plaintiff's condition, the adequacy of care, whether any alleged delay caused additional harm or damage, or what was medically appropriate under the circumstances. Nor Plaintiff or the lay witnesses are qualified to give opinions about the custom, practice or duties of a medical nurse. Only persons with the appropriate professional experience, training or knowledge may give expert opinions concerning medical care. To give expert testimony, a witness

must be shown to possess specific technical or other specialized knowledge, skill, training or education on the subject matter of their testimony. *Fed.R.Evid*. 702.

Additionally, any attempt to introduce testimony by either the Plaintiff or lay witness as to what a doctor or medical provider told them regarding a medical issue is likewise inadmissible as hearsay.

Specifically, Defendant requests the court to exclude the following:

> F.   The deposition testimony of Trenton Gartman that he was told by the EMS paramedics that he had a heart attack. [see Brady's Evidentiary Appendix in Support of Motion in Limine submitted herewith Ex. A, Trent Gartman depo, p. 158 ll. 14-23, p. 159 l. 1]. Paramedics are not qualified to diagnose a heart attack and this testimony is not supported by the EMS report.

Plaintiff's position is that he is seeking all damages related to the 2+ hours Plaintiff suffered in the Autauga County Jail. Events after Plaintiff left the jail are relevant and admissible for several reasons. First, that Gartman required heart procedures after leaving shows he had a serious medical need; it shows how serious the situation was for Gartman. Without testimony regarding the serious nature of Gartman's need, a jury could get the false impression that this was something less serious than it was such a mere mechanical failure. Second, the emotionally traumatic nature of this incident for Gartman comes in part from the knowledge that

he could have died. What medical personnel said to him (i.e., that he had or was having a heart attack and how many times the Plaintiff's ICD fired in the jail) is offered for its emotional impact on Gartman and not for the truth of what was stated. Gartman's emotional distress regarding what happened to him in the jail did not end once he left the jail. Third, according to Dr. Vance, while the heart procedures most likely would have been necessary in the future, the repeated ICD firings likely accelerated Gartman's need for the procedures and the replacement of the battery.

Any legitimate concern of defendants regarding such evidence can be addressed with a limiting instruction.

**6.    TO EXCLUDE ANY TESTIMONY OR EVIDENCE REGARDING PLAINTIFF'S DAMAGES OTHER THAN EVIDENCE OF PAIN AND MENTAL ANGUISH ALLEGEDLY CAUSED BY THE FIRINGS.**

The parties agree that Plaintiff can put on pain and mental anguish caused by the firings, but do not agree to exclude future mental anguish. See pg. 21, #6 of this report for defendants' position. See F. above for Plaintiff's position.

**7.    TO EXCLUDE ANY TESTIMONY OR EVIDENCE OF PERMANENT PHYSICAL, MENTAL OR EMOTIONAL DAMAGE OR INJURY TO PLAINTIFF**

Same as #6.

**8.    TO EXCLUDE ANY TESTIMONY OR EVIDENCE REGARDING FUTURE MEDICAL TREATMENT OR FUTURE MEDICAL CHARGES - Agreed**

**11.    TO EXCLUDE THE TESTIMONY OF MICHAEL D. McMUNN (MOOT)**

**12.    TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING ANY EMS REPORTS REFERENCING ANY HEART ATTACK OR CARDIAC ISSUE**

Agreed to Redacted Report.

**13.    TO EXCLUDE ANY EVIDENCE OR TESTIMONY REGARDING ANY MEDICAL RECORDS OR MEDICAL BILLS NOT PROPERLY AUTHENTICATED, NOT PROVEN TO BE REASONABLE AND NECESSARY AND NOT PROVEN TO BE CAUSED BY DEFENDANT**

Defendants' position is there is no medical bills clamed. Medical records not agreed to are hearsay.

**15.    TO EXCLUDE HEARSAY STATEMENTS**

Agreed to A, G, H

> B.    Trenton Gartman's deposition testimony that Officer Nixon told him he would get out of jail in 2-3 hours. "You will get to go. Just hang in there." [see Brady's Evidentiary Appendix in Support of Motion in Limine submitted herewith Ex. A, Trent Gartman depo, p. 200 ll. 18-22] Hearsay, Plaintiff's position is set out on pages 21,22

> C.    Trenton Gartman's deposition testimony that a cardiologist and the person that interrogated his ICD device told him that he was shocked 37-38 times. [see Brady's Evidentiary Appendix in

Support of Motion in Limine submitted herewith Ex. A, Trent

Gartman depo, p. 210 ll. 7-12] Hearsay, Plaintiff's position is set

out on pages 21,22

D.    Trenton Gartman's deposition testimony that his former, now

retained cardiologist, "Dr. John Williams said if I had gotten

medical treatment faster, none of this damage would have

happened." [see Brady's Evidentiary Appendix in Support of

Motion in Limine submitted herewith Ex. A, Trent Gartman

depo, p. 290 ll. 18-23] Hearsay, Plaintiff's position is set out on

pages 21,24

E.    Trenton Gartman's deposition testimony that a doctor at Jackson

Hospital told him that he had a heart attack. [see Brady's

Evidentiary Appendix in Support of Motion in Limine submitted

herewith Ex. A, Trent Gartman depo, p. 159 ll. 13-20] Hearsay,

Plaintiff's position is set out on pages 21,22

F.    Trenton Gartman's deposition testimony that the EMS

paramedics told him he was having a heart attack. [see Brady's

Evidentiary Appendix in Support of Motion in Limine submitted

herewith Ex. A, Trent Gartman depo, p. 158 ll. 14-23, p. 159, ll.

1-2]. Hearsay, Plaintiff's position is set out on pages 21,22

16.   TO EXCLUDE EVIDENCE OR TESTIMONY REGARDING THE PLAINTIFF'S GOOD CHARACTER

17.   TO EXCLUDE TESTIMONY OR EVIDENCE REGARDING WEALTH AND POVERTY

18.   TO EXCLUDE TESTIMONY OR EVIDENCE REGARDING FAILURE TO CALL WITNESS

19.   TO EXCLUDE TESTIMONY OR EVIDENCE REGARDING PROBABLE TESTIMONY OF WITNESS

21.   TO EXCLUDE EVIDENCE OR TESTIMONY OR COMMENTS ON TESTIMONY OF ANOTHER WITNESS AS TO THE TRUTHFULLNESS OF THE WITNESS BUT NOT AS TO A FACT TESTIFIED BY A WITNESS

23.   TO EXCLUDE TESTIMONY OR EVIDENCE REGARDING SETTLEMENT

24.   TO EXCLUDE TESTIMONY OR EVIDENCE REGARDING SUPERSEDED PLEADINGS

25.   TO EXCLUDE EVIDENCE NOT PRODUCED IN THE CASE. AGREED, EXCEPT AS TO PROPER REBUTTAL EVIDENCE NOT REQUIRED TO BE DISCLOSED

30.   TO INVOKE THE RULE

**Plaintiff does not agree**

3.   TO EXCLUDE ANY TESTIMONY OR EVIDENCE REFERENCING A BREACH OF THE STANDARD OF CARE

Plaintiff initially maintained a state medical malpractice claim against Defendant Brady. This claim has been dismissed by Plaintiff and the only remaining claim against this Defendant is Plaintiff's §1983 deliberate indifference claim. The standard to prove a medical malpractice claim under the Alabama Medical Liability Act is a breach of the standard of care. Plaintiff's burden of proof for a deliberate indifference claim does not consider any breach of the standard of care. Instead, Plaintiff must show that the medical treatment was "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). A prisoner bringing a deliberate indifference claim has a steep hill to climb. *Keohane v. Florida Department of Corrections Secretary*, 952 F.3d 1257, 1266 (11th Cir. 1220). Neither inadvertent failure to provide medical care, nor negligent diagnosis of treatment of a medical condition, nor medical malpractice states a claim for deliberate indifference. *Estell v. Gamble*, 429 U.S. 97, 104 (1976).

Since Plaintiff has dismissed his medical liability claims, and the standard for proof for deliberate indifference is greater than the burden for a medical malpractice claim premised on proof of breach of standard of care, any testimony regarding a breach of the standard of care is irrelevant to Plaintiff's remaining §1983 claim. *See Fed.R.Evid.* 401 and 402. Additionally, any probative value of such evidence is substantially outweighed by the danger of unfair prejudice, misleading the jury,

undue delay, and unnecessarily wasting the Court's time. The jury may think that if Plaintiff proves Brady breached a standard of care, she is liable for deliberate indifference which is not the case. Plaintiff's position is the violation of the standard of care can be evidence of deliberate indifference.

5. **TO EXCLUDE ANY TESTIMONY OF WITNESSES OR EVIDENCE REGARDING THE ULTIMATE ISSUE OF DELIBERATE INDIFFERENCE**

No witness testifying to the Ultimate Issue of Deliberate Indifference. No witnesses may testify that Defendants' conduct was deliberately indifferent. An expert is precluded from testifying to the ultimate legal issue of deliberate indifference. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092 (11th Cir. 2005) (testifying experts cannot offer legal conclusions); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537 (11th Cir. 1990) (an expert may not tell the jury what result to meet); *Salvani v. Corizon Health, Inc.*, 219 WL 4101794 (S.D. Fla. 2019).

Plaintiff's position is that deliberate indifference is not a legal issue and to exclude could potentially handicap Plaintiff cross-examine witness.

6. **TO EXCLUDE ANY TESTIMONY OR EVIDENCE REGARDING PLAINTIFF'S DAMAGES OTHER THAN EVIDENCE OF PAIN AND MENTAL ANGUISH ALLEGEDLY CAUSED BY THE FIRINGS.**

Agreed, other than Plaintiff does not agree to exclude testimony to <u>future</u> mental anguish. Plaintiff's counsel previously conceded that he was not going to take the position that Plaintiff has any permanent injury and that Plaintiff's damages claims are just limited to pain and suffering and mental anguish from the ICD firings. [see Brady's Evidentiary Appendix in Support of Motion in Limine submitted herewith, Ex. E, McMunn depo., p. 84, ll. 17-25; p. 85, ll. 1-10.]  Further, Plaintiff conceded that Plaintiff's claims for damages were not going beyond what Dr. Vance testified was related during his deposition.  [see Brady's Evidentiary Appendix in Support of Motion in Limine submitted herewith, Ex. E, McMunn depo., p. 85.] Plaintiff's treating physician, Dr. Vance, could not state that the stent and ablation procedures or replacing Plaintiff's defibrillator were caused by the events that occurred at the jail.  [see Brady's Evidentiary Appendix in Support of Motion in Limine submitted herewith, Ex. F, Vance depo., p. 30, ll. 5-14; p. 34, ll. 13-23; p. 35, ll. 1-4; p. 36, ll. 2-6.]  Further, Dr. Vance testified that Gartman did not suffer any significant loss in heart function or that the jail events caused any heart enlargement.  (*Id*. P. 36, ll. 20-23, p. 37, ll. 1-23, p. 38, l. 1.)

Plaintiff's position is that he is seeking all damages related to the 2+ hours Plaintiff suffered in the Autauga County Jail. Events after Plaintiff left the jail are relevant and admissible for several reasons. First, that Gartman required heart procedures after leaving shows he had a serious medical need; it shows how serious

the situation was for Gartman. Without testimony regarding the serious nature of Gartman's need, a jury could get the false impression that this was something less serious than it was such a mere mechanical failure. Second, the emotionally traumatic nature of this incident for Gartman comes in part from the knowledge that he could have died. What medical personnel said to him (i.e., that he had or was having a heart attack and how many times the Plaintiff's ICD fired in the jail) is offered for its emotional impact on Gartman and not for the truth of what was stated. Gartman's emotional distress regarding what happened to him in the jail did not end once he left the jail. Third, according to Dr. Vance, while the heart procedures most likely would have been necessary in the future, the repeated ICD firings likely accelerated Gartman's need for the procedures and the replacement of the battery.

Any legitimate concern of defendants regarding such evidence can be addressed with a limiting instruction.

### 9.    TO EXCLUDE ANY EVIDENCE OR TESTIMONY RELATED TO ANY JACKSON HOSPITAL OR OTHER RECORDS REFERENCING ANY CARDIAC ABLATION, STENT, IMPLANTABLE CARDIAC DEFIBRILLATOR ("ICD"), OR OTHER PROCEDURE PLAINTIFF UNDERWENT SUBSEQUENT TO HIS TRANSFER FROM THE AUTAUGA COUNTY JAIL ON MAY 26, 2016

Defendants agree to the Jackson Hospital History record, Plaintiff's Ex. 2 is admissible. To the extent other documents reference, mention, or discuss Plaintiff undergoing an ablation, stent procedure, defibrillator replacement, defibrillator

battery replacement, or any surgical, medical, or other procedure, these documents lack any foundation required for their introduction into evidence. No physician or other qualified expert has testified that any such procedure or other treatment was reasonable and necessary, as required for admissibility. The reasonableness and necessity of medical treatment is not a matter of common knowledge but are matters for expert opinion. "Federal and state authorities are legion for the proposition that medical conclusions must be stated to a reasonable degree of medical certainty to be admissible." *Portis v. Wal-Mart Stores East, L.P.*, 2008 WL 3929672, *1 (S.D. Ala. Aug. 22, 2008) (footnote omitted); *Fed.R.Evid.* 702.

Finally, no physician or other qualified expert has testified to a reasonable degree of medical probability that any such procedure was medically or proximately caused by any act, omission, or occurrence at the Autauga County Jail. Absent such testimony of medical causation, the evidence is not admissible.

Plaintiff's position is set out above in 6, pages 21 and 22.

## 10.   TO EXCLUDE ANY ALLEGATION OF SPOLIATION OR FRAUDALENT CREATION OF MEDICAL RECORDS BY NURSE BRADY OR LABELLA MCCALLUM OF EVIDENCE BY DEFENDANT

Plaintiff's counsel has indicated he plans to make a "spoliation" argument as to the QCHC medical file.  Plaintiff's attorney accused Lisa Brady's counsel on the record during Dr. Donald Kern's deposition of September 21, 2021, with assisting

with or hiding a medical file.  Not only did counsel not hide this file, she did not physically have retention of the file, knowledge that it had been located, nor did she bring it to the deposition.  The evidence is that it was located at the jail by a former QCHC nurse, Marki Geon, at Warden Nixon's request and provided to the County's attorney, Kyle Shirley, whose custody it was in until produced at Nurse Brady's deposition.  It was brought to the deposition by Mr. Shirley upon Plaintiff's request that the original medical file be produced.  Lisa Brady's counsel received a copy when Plaintiff's attorney did.  [See Brady's Evidentiary Appendix in Support of Motion in Limine submitted herewith, Ex. H, Kern's depo., pp. 186-187.]

Prior to that day, Lisa Brady's counsel had been provided her original assessment note which she had written on a Refusal of Treatment form at the time of her assessment.  She did not prepare a standard medical file on the same day due to Plaintiff's agitated state over his domestic problems, which resulted in her only being able to hurriedly jot down notes on the first "paper" she could grab.  Her testimony is that she transferred that note to the QCHC standard history intake form the following day.

When the County received a Public Record Request in May 2018, it could not locate this file.  Warden Nixon pieced together a response to the request resulting in a production of the original note made by Lisa Brady on the Treatment Refusal form and all of the jail non-medical records referencing Plaintiff.  This is the only file Lisa

Brady's counsel had until the County produced Brady's file at the same time Plaintiff's attorney received it which had been generated the day after her actual assessment.

The timeline of the document production evidences that Lisa Brady did not intentionally create a false medical file.  Lisa Brady left the jail before the Public Records Request or Plaintiff's Complaint was filed.

In order to establish spoliation of physical documents, a party must prove that a destructive act occurred, that litigation was foreseeable at the time and that the act was undertaken in bad faith.  *Jarvis v. Chandler*, 480 F.Supp.3d 1339 (M.D.Ala. 2020).  Plaintiff has presented no evidence that a destructive act occurred and at the time of that destructive act litigation was reasonably foreseeable in that Defendant or her attorney on her behalf undertook this act in bad faith.  There is no evidence to support the file produced by Mr. Shirley at Lisa Brady's deposition was intentionally created by her to falsely cover her care.

Mentioning of spoliation or fabricating the medical files would be irrelevant since Plaintiff cannot prove any of the above elements or produce any evidence of fabrication.  *See Fed.R.Evid.* 401 and 402.  Additionally, any such evidence would be highly prejudicial to Defendant under *Fed.R.Evid.* 403, the probative value of such evidence, if any, is substantially outweighed by its prejudicial effect.  Such evidence, therefore, should be excluded under *Fed.R.Evid.* 401, 402 and 403.

Plaintiff's position is that he does not seek a spoliation jury instruction but asks to introduce evidence challenging the integrity of Brady's medical records.

## 15.    TO EXCLUDE HEARSAY STATEMENTS

The parties have agreed to 15, G and H, Defendants' position is that each statement below is an out of court statement offered for the truth of the matter asserted and does not fall into any recognized hearsay exception. *Fed.R.Evid*. 801-804.

> A.    Defendants agree if not offered for the truth of the matter asserted.

B – F are hearsay statements which do not fall under a hearsay exception.

> B.    Trenton Gartman's deposition testimony that Officer Nixon told him he would get out of jail in 2-3 hours. "You will get to go. Just hang in there." [see Brady's Evidentiary Appendix in Support of Motion in Limine submitted herewith Ex. A, Trent Gartman depo, p. 200 ll. 18-22]

> C.    Trenton Gartman's deposition testimony that a cardiologist and the person that interrogated his ICD device told him that he was shocked 37-38 times. [see Brady's Evidentiary Appendix in

27

Support of Motion in Limine submitted herewith Ex. A, Trent

Gartman depo, p. 210 ll. 7-12]

E.       Trenton Gartman's deposition testimony that a doctor at Jackson

Hospital told him that he had a heart attack. [see Brady's

Evidentiary Appendix in Support of Motion in Limine submitted

herewith Ex. A, Trent Gartman depo, p. 159 ll. 13-20]

F.       Trenton Gartman's deposition testimony that the EMS

paramedics told him he was having a heart attack. [see Brady's

Evidentiary Appendix in Support of Motion in Limine submitted

herewith Ex. A, Trent Gartman depo, p. 158 ll. 14-23, p. 159, ll.

1-2].

Plaintiff's position is set out on pages 21 and 22.

## 26.   TO EXCLUDE EVIDENCE OR TESTIMONY REGARDING NEW THEORIES

Plaintiff's position is that the pretrial order controls the claims and doesn't

limit factual arguments he might make.

## 29.   TO EXCLUDE ANY EVIDENCE OR TESTIMONY OF DR. DONALD KERN'S DEPOSITION TESTIMONY ON HYPOTHETICAL DISPUTED FACTS

Plaintiff asked to depose the physician assigned to the Autauga jail, Dr.

Donald Kern.  Dr. Kern had no communication regarding Plaintiff and, therefore,

provided no care.  Defendant made him available for deposition as a fact witness on September 21, 2021.  Other fact witness depositions were taken after that date.  Over Defendant's objections, Plaintiff asked Dr. Kern for opinions as to Lisa Brady's care based upon hypotheticals.  Defendant objected to those questions as only experts can testify to hypotheticals.  *United States v. Henderson*, 409 F.3d 1293 (11th Cir. 2005). One of the "facts" in those hypotheticals, is a disputed fact; that is, whether Plaintiff appeared to be stable with cardiac non-complaints after the initial firing during Lisa Brady's assessment.   That fact is very relevant in that both Plaintiff's treating cardiologist, Dr. Vance, and Defendant's retained expert agree an ER visit is not mandated based on one firing with a stable patient.

Defendant disclosed Dr. Kern out of an abundance of caution as a non-retained expert since he is a medical doctor but did not put him up as an expert witness which was clearly stated to Plaintiff.  Defendant did not submit a Rule 26 report.  Dr. Kern was deposed as a fact witness before expert disclosures were due and Defendant does not intend to utilize him as an expert.

Plaintiff's position is that Dr. Kern was the doctor that Brady should have called under the facts Plaintiff will prove; such hypotheticals are appropriate.

**Stipulations**

**20.   TO EXCLUDE EVIDENCE OR TESTIMONY REGARDING TRIAL PREPARATION**

The parties agree that contents with their attorneys cannot be discussed, but the length of the discussions can be inquired into, or what they otherwise did to prepare.

**22.   TO EXCLUDE TESTIMONY OR EVIDENCE REGARDING OPINIONS AND EXPERIENCES OF PLAINTIFF'S COUNSEL**

Agreed to anything but personal anecdotes in analogies in closing.

### EVIDENCE OF THE ST. JUDE FASTPATH SUMMARY

14, 15(C) Defendants do not object to the download chart based on that it is a business record and authentic copy, but objects to the heart rate and duration data contained therein substantively as it is hearsay. Also, there is no testimony explaining what the data means – only assumptions by non-qualified people. (See Ds objection to the download chart in this Report, Section) Ia. Plaintiff's response is set out in Ia.


Respectfully submitted this 29th day of March, 2022.


/s/ Miland F. Simpler, III
MILAND F. SIMPLER, III (SIM103)
C. WINSTON SHEEHAN (SHE013)
*Attorneys for Defendants,*
*Jabari Agee and Patrick Cheatham*


**OF COUNSEL:**
BALL, BALL, MATTHEWS & NOVAK, P.A.

445 Dexter Avenue - Suite 9045 (36104)
Post Office Box 2148
Montgomery, Alabama 36102-2148
Telephone:  334-387-7680
Facsimile:   334-387-3222
mfsimpler@ball-ball.com
wsheehan@ball-ball.com

                         /s/ LaBella S. McCallum
                         LaBella S. McCallum
                         *Attorney for Lisa Brady*

OF COUNSEL:
Eric D. Hoaglund
McCallum, Hoaglund & McCallum, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, Alabama 35216
Telephone: (205)824-7767
edh@mhmfirm.com
lsm@mhmfirm.com

                         */s/Henry F. Sherrod, III*
                         Henry F. Sherrod, III, P.C.
                         119 South Court Street
                         Florence, Alabama 35630
                         hank@alcivilrights.com
                         *Attorney for Plaintiff*

OF COUNSEL:
HENRY F. SHERROD, III, P.C.
119 South Court Street
Florence, Alabama 35630
hank@alcivilrights.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2022, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the following registered persons and that those persons not registered with the CM/ECF system were served via U.S. mail:

Henry F. (Hank) Sherrod, III
Henry F. Sherrod, III, P.C.
119 South Court Street, Ste. 200
Florence, Alabama 35630
hank@alcivilrights.com

LaBella S. McCallum
McCallum, Hoaglund & McCallum, LLP
905 Montgomery Highway, Ste. 201
Vestavia Hills, Alabama 35216
lsm@mhmfirm.com

*/s/ Hank F. Sherrod, III*
OF COUNSEL