IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| TRENTON GARTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:18cv534-MHT |
| | ) | (WO) |
| LISA BRADY, an | ) | |
| Individual, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Following a jury trial on plaintiff Trenton Gartman's
42 U.S.C. § 1983 claim against defendant Lisa Brady for
deliberate indifference to a serious medical need, a jury
found Brady liable for $ 100,000 in compensatory damages
and $ 35,000 in punitive damages.  This case is before
the court on Gartman's motion for attorney's fees and
expenses.  He seeks to recover $ 210,715.00 in attorney's
fees and $ 26,676.89 in expenses.  Brady responds that
Gartman's attorney's fees should be reduced by at least
$ 63,875.00 (to at most $ 146,840.00) and that his
expenses should be reduced by $ 5,808.62 (to
$ 20,868.27).

Brady's principal argument for a reduction of attorney's fees and expenses is that Gartman obtained only partial or limited success and that consideration of the 12 factors identified by the former Fifth Circuit Court of Appeals in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[1] weighs against the reasonableness of the requested fees and expenses.  She also argues that the attorney's fees should be reduced based on a prior representation by one of Gartman's attorneys and the fact that the attorney billed his travel time at his full hourly rate.  Finally, she argues that her insurance will not cover attorney's fees and, accordingly, that her inability to pay warrants a reduction.  For the reasons that follow, the court will award Gartman $ 143,552.00 in attorney's fees and $ 19,716.25 in expenses.

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

## I.   Entitlement to Fees and Expenses

According to 42 U.S.C. § 1988, in a § 1983 action "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs," subject to exceptions not applicable here.  42 U.S.C. § 1988(b).  "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, at 1 (1976)).

"[A] prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  *Id.*, 461 U.S. at 429 (quoting S. Rep. No. 94-1011, at 4 (1976)).  Therefore, as a threshold matter, § 1988 requires that a party seeking to recover attorney's fees be a "prevailing party." *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372, 1376 (11th Cir. 2022).  Given Gartman's

3

recovery of damages on his § 1983 claim against Brady, there is no dispute that Gartman was the prevailing party and, therefore, that he is entitled to reasonable attorney's fees and expenses.

## II. Reasonable Fees and Expenses

"The determination of reasonable attorneys' fees is left to the sound discretion of the trial judge." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1187 (11th Cir. 1983). "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). This value is the "lodestar" of the attorney's fee calculation. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 788-89 (1989). From this starting point, the court must determine whether any portion of this fee should be adjusted upward or downward. *See Hensley*, 461 U.S. at 434. In making these

**4**

determinations, the court is guided by the 12 factors set out in *Johnson*, 488 F.2d 714: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

"The 'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'" *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d

5

1292, 1303 (11th Cir. 1988)).   This burden includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate," as well as "records to show the time spent on the different claims[] and the general subject matter of the time expenditures."   *Id.* (quoting *Norman*, 836 F.2d at 1303).   "Those opposing fee applications have obligations, too.   In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'"   *Id.* at 428 (quoting *Norman*, 836 F.2d at 1301).

### A. Reasonable Hours

Attorneys Henry F. Sherrod, III and Alan Bart Lasseter represented Gartman in this case.   Sherrod seeks compensation for 388.8 hours, and Lasseter seeks compensation for 41.1 hours.   The court considers three *Johnson* factors--the time and labor required; the novelty

6

and difficulty of the case; and the amount involved and the results obtained--in assessing the reasonableness of the hours claimed.  The court must exclude "'excessive, redundant or otherwise unnecessary' hours ... from the amount claimed." *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 434).  "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights ...." *Id.*

*Time and Labor Required, and Novelty and Difficulty of Case:* In the subsection that follows, the court has, with explanation, reduced the hours claimed by Sherrod and Lasseter by 25 % because of Gartman's limited success.  Here, when it now discusses the 'hours claimed' by the attorneys it is referring to only 75 % of those hours: 291.6 hours for Sherrod and 30.83 hours for Lasseter.

The court has conducted an independent review of these reduced hours to determine if there is any time

7

that should be excluded because it was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Although multiple attorneys worked on the case, Lasseter represented Gartman at the outset of the case, and Sherrod took over the representation later in the process. Apart from what might amount to a couple of hours of correspondence between Sherrod and Lasseter about the case at the beginning of Sherrod's involvement, the court discerns no duplication of efforts, and certainly no unreasonable or unnecessary duplication, in the hours billed. Aside from Brady's objection based on Gartman's partial success, which the court addresses below, the hours billed are reasonably proportionate to the amount of work required for purposes of the pleadings, motions, depositions, and trial preparation in this case. Even if, as Brady asserts, the case was not overly complex, neither was it run-of-the-mill. Although the incident at the core of this case took place within the span of no more than 24 hours, relevant

evidence in the application of the deliberate-indifference standard to Gartman's § 1983 claim included nontrivial medical testimony, medical records, and lay testimony about the specific procedures and allocation of responsibility within the county jail in which the incident underlying Gartman's claims occurred.

Aside from her objection based on Gartman's partial success, Brady makes no specific argument that the number of hours Sherrod and Lasseter have billed is unreasonable or excessive. The court finds that the hours billed by Gartman's counsel were reasonable in relation to the issues presented in this case.

*Amount Involved and Result Obtained:* Brady objects that Sherrod's hours should be reduced to reflect Gartman's partial success. The court considers this argument in the context of its determination of reasonable hours within the lodestar calculation, although Brady's requested reduction might alternatively

be framed as an adjustment to the lodestar figure.
*Compare Norman*, 836 F.2d at 1302 ("[I]n determining
reasonable hours the district court must deduct time
spent on discrete and unsuccessful claims."), *with id.*
("If the result was partial or limited success, then the
lodestar must be reduced to an amount that is not
excessive.  In doing so, the court may attempt to identify
specific hours spent in unsuccessful claims or it may
simply reduce the award by some proportion." (citation
omitted)).  "In the end, of course, the result is the
same whether you adjust the fee itself or the number of
hours spent, and the Supreme Court has approved of both
approaches."  *Dillard v. City of Greensboro*, 213 F.3d
1347, 1355 n.9 (11th Cir. 2000) (per curiam).  The court's
conclusion in this case is the same regardless of the
order in which it performs the calculations.

"[T]he extent of a plaintiff's success is a crucial
factor in determining the amount of an award of
attorney's fees under 42 U.S.C. § 1988."  *Hensley*, 461

10

U.S. at 440.   The case law draws a distinction between unrelated, discrete claims and claims involving a common core of shared facts or law.   Where a plaintiff "present[s] in one lawsuit distinctly different claims for relief that are based on different facts and legal theories, ... work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'"   *Id.* at 434-35 (citation omitted). Accordingly, where the claims are distinctly different and based on different facts and legal theories, "the court cannot award any fee for services on the unsuccessful claims." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987).

In contrast, where "the plaintiff's claims for relief ... involve a common core of facts or [are] based on related legal theories," the "lawsuit cannot be viewed as a series of discrete claims," and "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours

11

reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.   In a case involving such related claims, "[i]f the plaintiff obtained 'excellent results,' his attorney should be fully compensated for all time reasonably expended on the litigation." *Popham*, 820 F.2d at 1578 (quoting *Hensley*, 461 U.S. at 435); *see also Hensley*, 461 U.S. at 435 ("In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").   Conversely, if "a plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440.

Gartman's third amended complaint named five defendants:  two officers at the Autauga County Jail (Patrick Cheatham and Jabari Agee), two nurses at the jail (Lisa Brady and Latechia Ball), and the corporation that contracted to provide medical services at the jail

(QCHC, Inc.).[2]   The complaint included two claims:   a
§ 1983 claim against each defendant for deliberate
indifference to a serious medical need and a claim
against defendants Ball, Brady, and QCHC, Inc. under the
Alabama Medical Liability Act, Ala. Code § 6-5-480 *et
seq.*   On both claims, Gartman sought damages in an
unspecified amount.   Prior to trial, he voluntarily
dismissed his claim under the Alabama Medical Liability
Act against Brady, Ball, and QCHC, Inc., as well as his
§ 1983 claim against Ball and QCHC, Inc.   At trial,
Gartman prevailed on his § 1983 claim against
Brady--recovering $ 100,000 in compensatory damages and
$ 35,000 in punitive damages--but lost on his § 1983
claim against Cheatham and Agee.

In light of Gartman's success on one claim against
one defendant, Brady argues that Gartman's recoverable

---

2. While additional defendants were included in the
first complaint, Brady does not suggest that any work
involving these other defendants was unnecessary or is
otherwise not properly countable among the reasonable
hours billed by Gartman's counsel.

attorney's fees should be reduced to exclude his attorneys' work on the voluntarily dismissed claim (the Alabama Medical Liability Act claim) and their work involving defendants against whom Gartman did not ultimately succeed (Cheatham, Agee, Ball, and QCHC, Inc.). With respect to specific reductions, Brady argues that the court should exclude 30.3 hours that Sherrod billed for work in connection with an expert witness, Michael McMunn, R.N., whom Gartman did not call at trial; 22.3 hours that Sherrod billed for work pertaining to Ball and QCHC, Inc., including the taking of depositions of Ball and QCHC, Inc.'s corporate medical director; and 75.5 hours that he billed for work pertaining to Cheatham and Agee, including the taking of their depositions and the depositions of other correctional officers, as well as the preparation of a response to Cheatham, Agee, and Brady's motions for summary judgment. In total, Brady requests a reduction of 128.1 hours, or roughly one-third of Sherrod's hours.

**14**

To the extent Brady argues for a subtraction of 100 % of the hours that Sherrod worked on unsuccessful claims, the court disagrees.  Neither Gartman's Alabama Medical Liability Act claim nor his § 1983 claim against the other defendants was "distinctly different" from his § 1983 claim against Brady.  To the contrary, Gartman's claims arose from the same conduct and shared a common core of facts.  His claims against the defendants under § 1983 and the Alabama Medical Liability Act were both based on the defendants' alleged conduct and omissions during the same period of approximately 24 hours in which Gartman was detained at the Autauga County Jail.  The claims contained considerable factual overlap in that they implicated much of the same evidence regarding the number of implantable cardioverter defibrillator, or ICD, shocks that Gartman experienced while in custody, the severity and obviousness of his medical condition as a result of his shocks (as evidence of each defendant's knowledge), the actions that each defendant took or did

15

not take (as evidence of disregard of a known risk of serious medical harm or, with respect to the Alabama Medical Liability Act claim, a breach of the standard of care), and the extent of the pain and suffering that the shocks caused (as evidence of the seriousness of Gartman's medical condition and the extent of his damages).   Although Gartman's claim of deliberate indifference and his claim under the Alabama Medical Liability Act involved the application of different legal frameworks and standards, "courts have expansively treated claims as being related," *Popham*, 820 F.2d at 1579, and the court finds that Gartman's claims were related here.

While a blanket exclusion of hours for Sherrod's work on the unsuccessful claims is unwarranted, the court agrees with Brady that Gartman's partial or limited success warrants some reduction of the hours billed. "Where recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing

16

fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (ellipsis in original) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment). In several respects, Gartman's recovery was limited relative to the scope of relief he pursued in the course of the litigation. As noted above, he dismissed, and thus did not recover on, his claim under the Alabama Medical Liability Act. Additionally, he initially alleged permanent physical damages and medical costs as a result of his experience in the jail, but he ultimately did not pursue damages on these bases at trial.

In one respect, however, the fact that Gartman recovered against only one defendant out of five understates the degree of Gartman's success. A central component of the relief that Gartman sought in this case consisted of damages for the pain and suffering he

17

experienced while detained at the Autauga County Jail.
For much of the litigation of this case, there were
conflicts and ambiguities regarding the knowledge and
responsibility of various staff at the jail over the
course of Gartman's detention.  For example, even at the
trial stage, defendants Brady, Cheatham, and Agee gave
conflicting accounts of whether Cheatham and Agee
informed Brady of Gartman's deteriorating physical
condition after Gartman met with Brady in the nurse's
station.  *See Gartman v. Cheatham*, No. 2:18cv534-MHT,
2022 WL 714643, at *7-8 (M.D. Ala. Mar. 9, 2022)
(Thompson, J.) (noting the inconsistent accounts in the
defendants' depositions).  An assessment of the
credibility of these competing accounts was relevant to
a determination of which of the three defendants, if any,
was deliberately indifferent to Gartman's serious medical
need and caused him to suffer needlessly without
treatment.  Thus, to some extent, the work of Gartman's
counsel with respect to these other defendants, including

18

the taking of their depositions, played a causal role in
the success of Gartman's claim against Brady.  As this
court recognized in *Hall v. Lowder Realty Co.*, 263 F.
Supp. 2d 1352 (M.D. Ala. 2003) (Thompson, J.), a
plaintiff's success against only one of numerous
defendants may be "misleading" as a proxy for level of
success where litigation is necessary to determine which
of several connected defendants is properly held
accountable if a plaintiff succeeds on a claim.  *Id.* at
1360-61.  While the assignment of responsibility in this
case was not as complex as in *Hall*, which involved
interrelated corporate and individual defendants and
numerous real-estate transactions, the extent to which
Gartman's § 1983 claim against each defendant sought
damages for the same, or substantially similar,
underlying injuries should be considered in his favor.

Nevertheless, the court is, in general, also
convinced that Gartman would have spent much less time
in factual development and legal research if the focus

of the case had been on only the claim against Brady.
Some reduction on this basis is warranted.

Taking the above factors into consideration, the
court will reduce Gartman's requested hours by 25 %.
Although Brady's specific objections address only hours
billed by Sherrod, the court finds that application of
the reduction for partial success to all hours claimed
by Gartman is appropriate.  Rather than the "mathematical
approach comparing the total number of issues in the case
with those actually prevailed upon" that the Supreme
Court has rejected, *Hensley*, 461 U.S. at 435 n.11, the
court arrives at this reduction based on a comparison of
the nature and scope of the work underlying Gartman's
hours and the extent of his requested relief throughout
this litigation, as well as  the fact that Gartman would
have spent much less time in factual development and
legal research if the sole focus of the case had been the
claim against Brady.

Among the hours that were less directly related to

Gartman's success against Brady, Sherrod's work with McMunn was relatively attenuated.  Not only did Gartman not call McMunn as a witness, but Brady had raised unresolved objections regarding McMunn's prospective testimony.  Further, McMunn's opinions focused primarily on breaches of the medical standard of care--evidence that is less than deliberate indifference, but not necessarily unrelated to the deliberate-indifference inquiry.  *See, e.g.*, *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999) ("That medical malpractice--negligence by a physician--is insufficient to form the basis of a claim for deliberate indifference is well settled."); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) ("We have ... held that deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment.").  However, much of the time billed by Gartman's counsel in this case bore a much closer relationship to his ultimate success

21

against Brady, enabling Gartman to defeat Brady's motion for summary judgment and allowing Gartman's attorneys to develop fully the severity and obviousness of Gartman's pain and suffering, as well as Brady's knowledge of that suffering. A 25 % reduction of Gartman's hours balances those hours that bore a more attenuated connection with Gartman's success against Brady with those hours that more directly contributed to that success.

After the court applies this reduction, Sherrod will be compensated for 388.8 x 75 % = 291.60 hours, and Lasseter will be compensated for 41.1 x 75 % = 30.83 hours.


## B. Prevailing Market Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.  To determine the prevailing market rate, the court will consider the

22

following *Johnson* factors:  customary fee; whether the fee is fixed or contingent; the novelty and difficulty of the questions; the skill required to perform the legal services properly; the experience, reputation, and ability of the attorneys; time limitations; preclusion of other employment; the undesirability of the case; the nature and length of any professional relationship with the client; and awards in similar cases.

Sherrod requests compensation at a rate of $ 500 per hour, and Lasseter requests a rate of $ 400 per hour. Both attorneys assert that the State of Alabama is the relevant legal market for determining their reasonable hourly rates.  Brady makes no argument regarding Lasseter's requested hourly rate. The court focuses its analysis on Sherrod's requested hourly rate of $ 500.

At the outset, Brady argues that Gartman and Sherrod should be estopped from claiming a rate of more than $ 450 per hour for Sherrod's work in this case.  She cites Sherrod's representation that his hourly rate was

$ 450 during oral argument on a motion for a protective order before the magistrate judge.  *See* Def.'s Ex. A (Doc. 285-1) at 5 n.2 ("Counsel for the plaintiff stated at oral argument that he was not requesting attorney's fees for opposing the motion but submitted that his hourly rate is $ 450 and [that] he did not spend much time responding to the motion as he had previously researched the issue for another case.").  In reply, Gartman asserts that Sherrod "made a mistake" at the hearing because he was "caught off guard."  Pl.'s Reply (Doc. 293) at 1.

Brady cites no authority for her position that Gartman and Sherrod should be 'estopped' based on Sherrod's earlier representation.  Several considerations weigh against estoppel.  First, Sherrod's explicit disavowal of any request for attorney's fees at the time of his prior representation cuts against the notion that he attempted to mislead the courts.  *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("[C]ourts

**24**

regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" (citation omitted)). Second, Brady does not assert any sort of reliance on Sherrod's previous statement that would indicate unfairness. *See id.* at 751 (noting that another "consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."). Accordingly, the court finds that estoppel is inappropriate and proceeds with its analysis of the prevailing market rate for Sherrod's work in this case. Nevertheless, the court finds it is still proper to consider this earlier representation in determining the appropriate rate for Sherrod here.

*Experience, Reputation, and Ability:* Brady concedes

25

that Sherrod has established his experience, reputation, and ability as a lawyer.  Sherrod's declaration reflects that he has been an attorney in private practice for over 30 years, during which time he has litigated a substantial number of § 1983 cases involving law enforcement and correctional facilities.

*Customary Fee:* "The customary fee for similar work in the community should be considered." *Johnson*, 488 F.2d at 718.  "Although it is generally true that the 'rate of attorney's fees is that of the place where the case is filed,' it is proper to consider a different legal market if it appears unlikely that there would be any attorneys in the local market who would be willing to take the case and who would possess sufficient expertise in the area of law involved." *Gay Lesbian Bisexual Alliance v. Sessions*, 930 F. Supp. 1492, 1495 (M.D. Ala. 1996) (Thompson, C.J.) (citation omitted) (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).  Sherrod and Lasseter assert that

the State of Alabama, rather than the local Montgomery area, is the relevant legal market, based on the "limited number of attorneys who have the ability, experience, and financial wherewithal to handle [§ 1983 civil-rights] cases." Declaration of Henry F. Sherrod, III (Doc. 277-1) at 5; Declaration of Alan B. Lasseter (Doc. 277-5) at 4. Both attorneys more specifically highlight this scarcity in the context of § 1983 cases where plaintiffs have not suffered permanent physical injuries. *See* Declaration of Henry F. Sherrod (Doc. 277-1) at 4; Declaration of Alan B. Lasseter (Doc. 277-5) at 5. Gartman also presents the declarations of three other attorneys familiar with plaintiff-side legal practice in the State. At least one of these attorneys specifically opines that Alabama is the relevant legal market for plaintiff-side civil-rights and anti-discrimination litigation, *see* Declaration of Andrew C. Allen (Doc. 279-1) at 5, and the other two allude to a statewide market based on the scarcity of attorneys specializing

27

in the representation of § 1983 civil-rights plaintiffs, *see* Declaration of Jon Goldfarb (Doc. 277-8) at 2; Declaration of Randall C. Marshall (Doc. 277-9) at 2-3. Sherrod's own experience litigating § 1983 cases in all three federal districts in Alabama further speaks to a statewide market. Brady does not put forward any substantive argument or evidence to the contrary, apart from a citation to a decision of this court in the context of employment discrimination. *See Adams v. City of Montgomery*, No. 2:10cv924-MHT, 2013 WL 6065763, at *3 (M.D. Ala. Nov. 18, 2013) (Thompson, J.). The court finds that the appropriate legal market in this case is the State of Alabama.

The court next turns to Gartman's evidence of the prevailing rate within the Alabama legal market. "Satisfactory evidence" of the prevailing market rate "is more than the affidavit of the attorney performing the work" and "must speak to rates actually billed and paid in similar lawsuits." *Norman*, 836 F.2d at 1299. "The

weight to be given to opinion evidence ... will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Id.* While Sherrod's actual rate is an appropriate consideration, "the issue is the legal market rate, not an individual lawyer's rate." *Gay Lesbian Bisexual Alliance*, 930 F. Supp. at 1496. Moreover, the court notes that the evidence of prior awards should not be given controlling weight. *See Dillard*, 213 F.3d at 1355.

Sherrod's declaration states that his customary hourly rate since 2019 has been $ 500 when he bills on an hourly basis or quotes an hourly rate and that this rate is within the range of fees customarily charged by attorneys of similar experience handling cases of similar complexity in Alabama. In support of this contention, he states that, between 2009 and 2014, courts awarded his clients attorney's fees at hourly rates of $ 300 in 2009,

29

$ 350 in 2012, and $ 400 in 2014.  *See* Declaration of
Henry F. Sherrod, III (Doc. 277-1) at 5.  He also offers
the declarations of three attorneys that his rate is
reasonable based on their opinions of the prevailing
market rate within the State and of his experience and
reputation.  One attorney opined that "[t]he prevailing
market rate in Alabama for a plaintiff's attorney in
cases such as the current case range from $ 300.00 to
$ 650.00 per hour," Declaration of Jon Goldfarb (Doc.
277-8) at 2, while another opined that Sherrod "could
reasonably charge hourly rates anywhere in Alabama
between $ 500 and $ 650 per hour," Declaration of Andrew
C. Allen (Doc. 279-1) at 6.  Against the above, Sherrod's
in-court representation that his hourly rate was $ 450
is some countervailing evidence of his customary rate,
even if estoppel is not warranted on that basis.

Weighing Sherrod's representations about his current
rate, his previous awards of attorney's fees, and the
declarations of Sherrod and three other attorneys that

30

$ 500 is a reasonable hourly rate for an attorney in
Alabama with comparable skills and experience, the court
concludes that $ 450 is a reasonable hourly rate for an
attorney in the State of Alabama with approximately the
same experience and skill as Sherrod in a case of this
nature.

*Whether Fee is Fixed or Contingent:* With respect to
the existence of a contingent-fee agreement between
Gartman and Sherrod, Brady argues that "by agreeing to a
contingency contract," Gartman and Sherrod "should be
held to that agreement." Def.'s Resp. & Opp. (Doc. 285)
at 32. However, the Supreme Court has explained that "a
contingent-fee contract does not impose an automatic
ceiling on an award of attorney's fees." *Blanchard*, 489
U.S. at 93. Rather, "[s]hould a fee agreement provide
less than a reasonable fee calculated" in accordance with
the lodestar approach, "the defendant should nevertheless
be required to pay the higher amount." *Id.; see also
City of Burlington v. Dague*, 505 U.S. 557, 566 (1992)

31

(noting that "the lodestar model often (perhaps, generally) results in a larger fee award than the contingent-fee model"). Considering Sherrod's acceptance of a contingent-fee agreement as one factor in the lodestar calculation and the determination of reasonableness, the court does not find that Sherrod's contingent-fee agreement with Gartman supports a downward adjustment of his hourly rate from the customary rate determined above.

*Other Factors:* The remaining *Johnson* factors that are relevant to the prevailing market rate do not weigh strongly for a rate higher or lower than the customary rate. Generally, these factors reinforce the court's conclusion that a $ 450 rate is reasonable. Sherrod litigated this case with appropriate skill and ability. His time spent on this case is time that he could not have spent pursuing other employment or litigating other cases. And there is no reason to believe that Sherrod had a prior professional relationship with Gartman or was

32

subject to unique time limitations that would lead to a variance from the prevailing and customary rate.

With respect to specific hours, Brady argues that Gartman's hourly rate should be cut in half where Sherrod has billed for his travel time. Based on Sherrod's submissions (Doc. 277-2 and Doc. 293-5), it appears that he has billed for 54.2 hours of travel time, comprised of travel by car to and from numerous depositions, one mediation session, one visit to the Autauga County Jail (the site of the incident underlying the complaint), three client meetings, and the trial. With the exception of travel to and from one deposition in Georgia, all travel occurred within the State. Additionally, it appears that two of the three client meetings did not require any travel beyond travel for another purpose on the same day.

The court finds that Sherrod's travel in this case was reasonable. Additionally, as noted above, Gartman's decision to retain counsel from outside the Montgomery

area was reasonable in light of the limited availability of local civil-rights attorneys with experience handling comparable § 1983 cases. *See Dowdell*, 698 F.2d at 1192 ("Civil rights litigants may not be charged with selecting the nearest and cheapest attorney."). As this court has done previously, it will compensate Sherrod's reasonable travel time at his full hourly rate. *See, e.g.*, *Hall*, 263 F. Supp. 2d at 1363; *Gay Lesbian Bisexual Alliance*, 930 F. Supp. at 1497.

In sum, the court finds that the prevailing market rate is $ 450 per hour for an attorney of Sherrod's experience and qualifications in this case and $ 400 per hour for an attorney of Lasseter's experience and qualifications.


### C. Lodestar Calculation

In light of the above, the lodestars for Gartman's attorneys are as follows.

For Sherrod:

**34**

```
    388.8 hours x 75 % = 291.60

    291.60 hours x $ 450 per hour = $ 131,220.00.
```

For Lasseter:

```
    41.1 hours x 75 % = 30.83

    30.83 hours x $ 400 per hour = $ 12,332.00.
```

Total:

```
    131,220.00
   +12,332.00

    143,552.00
```


## D. Adjustments

In addition to the arguments addressed in the lodestar calculation above, Brady argues that her ability to pay should be considered as a basis for a reduction in Gartman's attorney's fees.  According to Brady, she does not have insurance that covers the attorney's fees of an opposing party, and, when the financial circumstances set out in her affidavit are considered, she cannot afford to pay Gartman's attorney's fees. Gartman contends that Brady's insurance policy through

35

QCHC, Inc. will cover Gartman's attorney's fees and further argues that, whether or not attorney's fees are covered, Brady's ability to pay is irrelevant.  The court will assume that Brady's insurance policy will not cover Gartman's attorney's fees.  Even with that assumption, the court finds that no adjustment is warranted.

Neither party has identified any case squarely deciding the question of whether a non-prevailing defendant's ability to pay is a basis for reducing the amount of attorney's fees awarded to the prevailing plaintiff under 42 U.S.C. § 1988.  In *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911 (11th Cir. 1982), the Eleventh Circuit held that "a district court awarding attorney's fees to a prevailing Title VII *defendant* should consider ..., as a limiting factor, the *plaintiff's* financial resources."  *Id.* at 917 (emphasis added).  In explaining its reasoning, the court elaborated that "the losing party's ability to pay" was "a consideration uniquely pertinent to the losing

plaintiff." *Id.* Like *Durrett*, the other cases cited by the parties involved awards of attorney's fees to prevailing defendants. *See Nesmith v. Martin Marietta Aerospace*, 833 F.2d 1489, 1491 (11th Cir. 1987) (per curiam) ("The amount of attorney's fees [awarded against the Title VII plaintiff] was properly modified by the district court in consideration of the plaintiff's ability to pay."). Although the Eleventh Circuit referred more generally to the "losing party's financial status" in *Baker v. Alderman*, 158 F.3d 516, 528 (11th Cir. 1998), that case also involved an award of attorney's fees to prevailing defendants. While the court in *Baker* observed generally that "[t]he law in this circuit is clear that ability to pay should be considered in the award of attorney's fees under § 1988," it cited to *Durett* and *Nesmith* for that proposition without purporting to expand the scope of those cases or otherwise identifying when, how, or to what extent the court had interpreted those cases to apply to awards to

37

prevailing plaintiffs.  *Id.* at 528 & n.77.

This court has not found a binding case settling whether and to what extent a § 1983 defendant's inability to pay attorney's fees may justify a reduction in an award under § 1988.  In *Knighton v. Watkins*, 616 F.2d 795 (5th Cir. 1980), the former Fifth Circuit Court of Appeals refused to hold that the defendants' ability to pay was "totally irrelevant" to attorney's fee awards to plaintiffs under § 1988, but found that the defendants' financial problems in that case took on "minor importance" in light of the fact that the plaintiff was "far more impoverished" than the defendants and that the case involved "relatively modest sums."  *Id.* at 799-800. Subsequently, in a case not binding on this court, the Fifth Circuit declined to address "whether or under what circumstances a nonprevailing defendant's financial condition may be weighed in charging that party with attorneys' fees under section 1988."  *Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 239 n.8 (5th Cir. 1990).

Several federal courts of appeals for other circuits have held, at a minimum, that a non-prevailing defendant's ability to pay does not warrant a denial, or even a reduction, of attorney's fees under § 1988.  The Seventh Circuit Court of Appeals held that a defendant's "ability to pay is not a 'special circumstance' that will bar an award of attorneys' fees to a successful plaintiff." *Entm't Concepts, Inc., III v. Maciejewski*, 631 F.2d 497, 507 (7th Cir. 1980) (quoting *Bunn v. Cent. Realty of La.*, 592 F.2d 891, 892 (5th Cir. 1979) (per curiam)).  Likewise, the Third Circuit Court of Appeals held that "the losing party's financial ability to pay is not a 'special circumstance'" and rejected the defendants' argument that "the district court erred in not reducing or denying the fee award" under § 1988. *Inmates of Allegheny Cty. Jail v. Pierce*, 716 F.2d 177, 179-80 (3d Cir. 1983) (quoting *Maciejewski*, 631 F.2d at 507); *see also E.C. v. Phila. Sch. Dist.*, 644 F. App'x 154, 157 (3d Cir. 2016) (applying *Pierce* in a different

39

statutory context and rejecting argument that district court should have reduced fee award due to defendant school district's budgetary difficulties).

This court has previously held that a defendant school board's "precarious financial condition" did not, in that particular case, "override[] the directive of 42 U.S.C.A. § 1988 to award attorney's fees to successful civil rights plaintiffs." *Lee v. Randolph Cty. Bd. of Educ.*, 885 F. Supp. 1526, 1532 (M.D. Ala. 1995) (Thompson, C.J.); *see also Lee v. Randolph Cty. Bd. of Educ.*, 882 F. Supp. 2d 1292, 1295-96 (M.D. Ala. 2012) (Thompson, J.) (reaffirming the same proposition). However, the court did not resolve whether a non-prevailing defendant's ability to pay could be considered generally.

Moreover, the differences in the purposes and standards for attorney's fee awards to prevailing plaintiffs and prevailing defendants under § 1988 suggest that the inability to pay carries much greater weight for

40

a non-prevailing plaintiff than for a non-prevailing
defendant, if it is properly considered for a
non-prevailing defendant at all. "Congress enacted
§ 1988 specifically because it found that the private
market for legal services failed to provide many victims
of civil rights violations with effective access to the
judicial process." *Rivera*, 477 U.S. at 576 (plurality
opinion). "[T]he contingent fee arrangements that make
legal services available to many victims of personal
injuries would often not encourage lawyers to accept
civil rights cases, which frequently involved substantial
expenditures of time and effort but produce only small
monetary recoveries." *Id.* at 577.  In accordance with
the purpose of § 1988 to ensure effective access to the
judicial process for civil-rights plaintiffs, "a
prevailing plaintiff 'should ordinarily recover an
attorney's fee unless special circumstances would render
such an award unjust.'" *Hensley*, 461 U.S. at 429 (quoting
S. Rep. No. 94-1011, at 4 (1976)); *see also Ellwest Stereo*

*Theatre, Inc. v. Jackson*, 653 F.2d 954, 955 (5th Cir. Unit B Aug. 1981) ("Although a district court's grant or denial of attorneys' fees is reviewable only for abuse of discretion, the discretion afforded district courts to deny attorneys' fees to prevailing plaintiffs under § 1988 is exceedingly narrow ....").

Whereas awarding attorney's fees to prevailing plaintiffs typically will vindicate the purpose of § 1988, "[i]f prevailing defendants were routinely awarded attorney's fees under § 1988, civil rights plaintiffs would be extremely reluctant to initiate litigation for fear of being charged with a fee award vastly exceeding the expected recovery, and in some cases their ability to pay, thereby vitiating the underlying purpose of § 1988." *Coates v. Bechtel*, 811 F.2d 1045, 1049 (7th Cir. 1987). To avoid this chilling effect, attorney's fees are not awarded to a prevailing defendant unless "the plaintiff's action was frivolous, unreasonable, or without foundation." *Hughes v. Rowe*,

449 U.S. 5, 14 (1980) (per curiam) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)).

Where the purpose of attorney's fee awards to prevailing defendants is "to deter the bringing of groundless lawsuits and to protect defendants from burdensome litigation having no legal or factual basis," *Durrett*, 678 F.2d at 915 (describing the *Christianburg* standard in the Title VII context), the non-prevailing plaintiff's financial ability to pay is directly relevant to the determination of an award that will "fulfill the deterrent purpose ... without subjecting the plaintiff to financial ruin," *id.* at 917. In contrast, a non-prevailing defendant's financial ability or inability to pay would appear to bear little relation to the purpose of § 1988 to ensure that plaintiffs with meritorious civil-rights claims have effective access to representation to vindicate their rights. Indeed, a legal landscape in which courts routinely reduced

43

prevailing plaintiffs' attorney's fee awards below reasonable amounts determined in accordance with the lodestar method could be viewed as undermining the purpose of the statute.

Nevertheless, the court need not reach the issue of whether a defendant's financial condition should be a proper consideration for determining whether to deny or reduce a prevailing plaintiff's request for attorney's fees. First, Brady does not seek a denial but only a reduction of Gartman's fee request.  Second, even if this court had the discretion to reduce Gartman's fee request based on Brady's financial circumstances, it would not do so. The court has, in its discretion, already greatly reduced Gartman's fee to essentially the bottom end of the reasonable range allowable. To reduce it further would penalize Gartman.  Moreover, Brady has not indicated, and thus left the court in the dark as to, how much she wants to court to reduce Gartman's fee in light of her financial circumstances.  Based on how much the

**44**

court has already reduced Gartman's fee request, and
after careful consideration of Brady's financial
circumstances, the court believes that it has struck a
proper balance--between the interest of Gartman in a
reasonable fee and the interest of Brady in a smaller fee
because of her financial circumstance--by allowing the
reduced fee to stand as is.


### E. Reasonable Expenses

In addition to attorney's fees, "[w]ith the exception
of routine office overhead normally absorbed by the
practicing attorney, all reasonable expenses incurred in
case preparation, during the course of litigation, or as
an aspect of settlement of the case may be taxed as costs
under § 1988." *Barnes*, 168 F.3d at 438 (quoting *Dowdell*,
698 F.2d at 1192); *see also Dowdell*, 698 F.2d at 1190
("Reasonable attorneys' fees under [§ 1988] must include
reasonable expenses because attorneys' fees and expenses
are inseparably intertwined as equally vital components

**45**

of the costs of litigation."). "[T]he standard of reasonableness is to be given a liberal interpretation." *Dowdell*, 698 F.2d at 1192. Reasonable costs of travel, food, lodging, postage, and photocopying are among the expense reimbursements that the Eleventh Circuit observed to have been "awarded ... liberally" by courts in the circuit. *Id.* at 1191-92.

Sherrod seeks $ 23,297.55 in expenses, consisting primarily of $ 13,496.15 in expenses for deposition transcripts, as well as lesser expenses for travel ($ 1,959.14), lodging ($ 2,725.42), meals ($ 432.48), copies of trial exhibits ($ 1,114.12), fees for subpoenas, depositions, mediation, and service of process ($ 2,741.21), trial notebooks and tabs ($ 777.12), parking ($ 45.00), and postage ($ 6.91). Lasseter seeks $ 3,379.34 in expenses, which appear to consist of the court filing fee ($ 400.00), expenses related to service of process ($ 1,515.00), and expenses related to medical records ($ 1,464.34).

**46**

Brady objects to Gartman's request for $ 777.12 in expenses for trial notebooks and tabs, arguing that Sherrod could have retrieved these notebooks following trial. Gartman responds that the notebooks were purchased specifically for this trial and could not be retrieved for reuse without consuming excessive time and expense. Gartman's billing of this expense without additional detail impedes this court's ability to determine whether the full expense is reasonable or whether it should be absorbed by Sherrod as routine overhead. Given this lack of specificity, the court will reduce the expense by 50 %, from $ 777.12 to $ 388.56, decreasing Sherrod's pre-adjustment expenses to $ 22,908.99.

As with Gartman's requested attorney's fees, Brady argues that expenses associated with Gartman's claims against other defendants, such as the costs of transcripts of depositions of those defendants and other witnesses, should be excluded entirely. For the reasons

**47**

explained above with respect to attorney's fees, the court will not exclude these expenses in their entirety. Rather, the court will reduce Gartman's expenses by 25 % to account for his partial success. *See Hall*, 263 F. Supp. 2d at 1371; *Black v. M.G.A., Inc.*, 51 F. Supp. 2d 1315, 1326 (M.D. Ala. 1999) (Thompson, J.). Applying this adjustment, the court will reduce Sherrod's expenses to $ 22,908.99 x 75 % = $ 17,181.74, and Lasseter's expenses will be reduced to $ 3,379.34 x 75 % = $ 2,534.51, for a total of $ 19,716.25 in expenses. (The court notes that it has reduced the allowed expenses even more than Brady has requested.)

* * *

Accordingly, for the above reasons, it is ORDERED that:

(1) Plaintiff Trenton Gartman's motion for attorney's fees and expenses (Doc. 277) is granted.

(2) Attorney's fees in the amount of $ 143,552.00

are awarded to plaintiff Gartman from defendant Lisa Brady as follows:

    (a) For attorney Henry F. Sherrod, $ 131,220.00.

    (b) For attorney Alan Bart Lasseter, $ 12,332.00.

(3) Expenses are awarded to plaintiff Gartman from defendant Brady in the amount of $ 19,716.25.

This case remains closed.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

DONE, this the 1st day of September, 2022.

    /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE

49